**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**MAURER RIDES USA, INC.; MAURER
SOHNE; MAURER RIDES; ZAMPERLA,
INC.; and ZAMPERLA SPA,**

                **Plaintiffs,**

**-vs-**                                                         **Case No. 6:10-cv-1718-Orl-37KRS**

**BEIJING SHIBAOLIA AMUSEMENT
EQUIPMENT CO., LTD. ; BEIJING
ZHONGLI WEIYE AMUSEMENT
EQUIPMENT CO., LTD.; GOLDEN
HORSE AMUSEMENT EQUIPMENT CO.,
LTD.; et al.**

                **Defendants.**
_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

    This cause came on for consideration after oral argument on the following motions filed herein:

> **MOTION:**   **ZAMPERLA PLAINTIFFS' MOTION FOR FINAL DEFAULT JUDGMENT AGAINST DEFENDANT BEIJING TONGJUNWEIDA PLAY EQUIPMENT, CO., LTD. (Doc. No. 34)**
>
> **FILED:**     **February 17, 2012**

> **MOTION:** ZAMPERLA PLAINTIFFS' MOTION FOR FINAL DEFAULT JUDGMENT AGAINST DEFENDANTS GOLDEN HORSE AMUSEMENT EQUIPMENT CO., LTD. AND BEIJING JIUHUA AMUSEMENT RIDES MANUFACTURING CO., LTD. (Doc. No. 37)
>
> **FILED:** February 20, 2012

## I. PROCEDURAL HISTORY.

On November 17, 2011, Plaintiffs Maurer Rides USA, Inc., Maurer Söhne, GmbH & Co. KG, Maurer Rides, GmbH (collectively "Maurer Rides") and Zamperla, Inc. and Zamperla, SpA (collectively "Zamperla") filed an amended complaint against a number of Defendants including Golden Horse Amusement Equipment Co., Ltd. ("Golden Horse"), Beijing Jiuhua Amusement Rides Manufacturing Co., Ltd. ("BJARM"), and Beijing Tongjunweida Play Equipment, Co., Ltd., ("BTPE"). Doc. No. 20. Although both Plaintiffs joined in the same complaint, only Zamperla asserts claims against Golden Horse, BJARM and BTPE. *See* Doc. No. 40.

The Zamperla entities allege that they design, manufacture and distribute certain amusement rides and roller coasters. Doc. No. 20 ¶ 3. They allege that Golden Horse, which holds itself out as being in a partnership in Florida with Hopkins Rides, LLC, and BJARM and BTPE make, import, distribute, advertise, promote, market, reproduce, offer for sale and sell unauthorized and counterfeit amusement rides and roller coasters that appear virtually identical to the amusement rides and roller coasters, and component parts thereof, designed, manufactured, distributed or sold by Zamperla. *Id.* ¶¶ 8, 10, 12. They assert that this activity constitutes unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a) (Count I); unfair competition in violation of Florida common law (Count II); trademark infringement in violation of Florida

-2-

common law (Count III); and, deceptive and unfair trade practices in violation of section 501.201, *et seq.*, Fla. Stat. (Count IV). They seek entry of an injunction, damages and attorney's fees and costs. Doc. No. 20.

Plaintiffs filed proof of service of the summons and amended complaint with exhibits for Golden Horse, BJARM and BTPE. Doc. Nos. 22, 23, 24, 25, 26, 27. None of these Defendants appeared or responded to the amended complaint. Upon motion by Plaintiffs, the Clerk of Court entered defaults against Golden Horse, BJARM and BTPE. Doc. Nos. 28, 29, 30, 31, 32, 33. Thereafter, Zamperla filed the above-referenced motions for entry of default judgments against each of these Defendants.

## II.     STANDARD OF REVIEW.

A court may enter a default judgment only if the factual allegations of the complaint, which

are assumed to be true, provide a sufficient legal basis for such entry. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law."). Therefore, in considering a motion for default judgment, a court must "examine the sufficiency of plaintiff's allegations to determine whether plaintiff is entitled to" a default judgment. *Fid. & Deposit Co. v. Williams*, 699 F. Supp. 897, 899 (N.D. Ga. 1988). A default judgment cannot be issued against a defendant based on a pleading that was not properly served on the defendant. *See Varnes v. Local 91, Glass Bottle Blowers Ass'n*, 674 F.2d 1365 (11th Cir. 1982).

"Although a defaulted defendant admits well-pleaded allegations of liability, allegations relating to the amount of damages are not admitted by virtue of default. Rather, the Court

determines the amount and character of damages to be awarded." *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999). If a default judgment is warranted, the court may hold a hearing for the purpose of assessing damages. Fed. R. Civ. P. 55(b)(2); *see also SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005). However, a hearing is not necessary if a party submits sufficient evidence to support the request for damages. *Id.*

### III. ALLEGATIONS OF THE AMENDED COMPLAINT.

The Zamperla entities are the designers, manufacturers and distributors of certain amusement rides and roller coasters. Doc. No. 20 ¶ 3. These amusement rides and roller coasters each involve innovative and unique design concepts and strict adherence to high safety standards that have been internationally recognized among manufacturers in the amusement ride industry. Some of the amusement rides and roller coasters that the Zamperla entities have designed, manufactured and distributed and sold include "Rocking Tug," the "Disk'O," "Moto Coaster," "Jump Around," "Flying Carousel," "SkyDrop," "Flying Tigers," and "Taga J." *Id.* ¶ 4.

Golden Horse, BJARM and BTPE are corporations that make, import, distribute, advertise, promote, market, reproduce, offer for sale and sell unauthorized and counterfeit amusement rides and roller coasters, designs and/or component parts that appear virtually identical to the amusement rides and component parts designed, manufactured, distributed and sold by Zamperla. *Id.* ¶¶ 8, 10, 12.

At a trade show held in Orlando, Florida in 2011, Golden Horse marketed and offered for sale various amusement rides and roller coasters designed, manufactured and distributed by Zamperla. *Id.* ¶ 33. Golden Horse renamed four of Zamperla's rides and marketed and attempted to sell them within the Middle District of Florida. *Id.* ¶¶ 35, 36 & Exhibits M through V. Golden

Horse falsely held itself out as a company who designed and manufactured the Super Swing ride, which is a "knock-off" of Zamperla's "Flying Carousel" ride under a different name. *Id.* ¶¶ 35, 36, 39, 40. This conduct was intended to deceive customers into believing that the Zamperla rides were designed and manufactured by Golden Horse. *Id.* ¶ 41.

At a trade show held in Orlando, Florida in 2011, BTPE falsely depicted four of the Zamperla's rides in its sales brochure as BTPE rides. *Id.* ¶ 42. Specifically, BTPE renamed four of Zamperla's rides. *Id.* ¶¶ 42, 43 and Exhibits X-1 through AA-1. BTPE left Zamperla's logo in the middle of their Crazy Car Dancing ride, which was the new name given to Zamperla's "Jump Around" ride. *Id.* ¶ 42 and Exhibits Z and AA. BTPE used the same color scheme and unique symbols on its Children Disco Turntable ride as those used on Zamperla's "Taga J" ride. *Id.* ¶ 43 and Exhibits AA-1 and BB.

At a trade show held in Orlando, Florida in 2011, BJARM falsely depicted three rides designed by Zamperla as its own in brochures and marketed these rides for sale. *Id.* ¶¶ 44, 45, 46 and Exhibits H, J, S, CC, DD and EE.

Zamperla alleges that through this conduct, Golden Horse, BJARM and BTPE are seeking to trade off the goodwill and reputation of Zamperla and gain a competitive advantage for their counterfeit products by associating their inferior products with Zamperla's products, marks and materials and passing off Zamperla's products as their own. *Id.* ¶ 54. These action create a strong likelihood of consumer confusion that will damage, dilute and tarnish Zamperla's name, reputation, goodwill and identity. *Id.* ¶ 56. Golden Horse, BJARM and BTPE's actions were deliberate, willful and wanton. *Id.* ¶ 55. Golden Horse, BJARM and BTPE's actions damaged Zamperla's goodwill, reputation and otherwise damaged Zamperla through lost sales due to their

deceptive practices. *Id.* ¶ 57. Golden Horse, BJARM and BTPE acted deliberately, willfully and wantonly. *Id.* ¶¶ 55, 81.

**IV. ANALYSIS.**

    *A. Liability.*

The amended complaint is not a model of clarity. Among other things, it combines different claims made by Maurer and Zamperla in common counts. In a response to a Court order and during oral argument, counsel for Zamperla indicated that only Zamperla, not Maurer, asserted claims that BTPE, Golden Horse and BJARM manufactured, promoted and advertised rides that appear in color and design to be rides manufactured and sold by Zamperla, changing only the names of the rides. In one instance, BTPE also used Zamperla's logo on its version of Zamperla's "Jump Around" ride. There is, however, no evidence that any of these defendants used Zamperla's registered trademark in the "Jump Around" ride or any of Zamperla's unregistered marks other than its logo.

The analysis for Florida common law trademark infringement is the same as under the Lanham Act. Similarly, the FDUTPA claim rises or falls on the success of the Lanham Act claim. *See Suntree Tech., Inc. v. EcoSense Int'l, Inc.*, 802 F. Supp. 2d. 1273, 1279 (M.D. Fla. 2011). Courts also apply the same analysis to claims of unfair competition under Florida common law and to Lanham Act claims. *See Homes & Land Affiliates, LLC v. Homes & Loans Magazine, LLC*, 598 F. Supp. 2d 1248, 1257 n.7 (M.D. Fla. 2009). Zamperla seeks damages only under the Lanham Act. Therefore, I will only address liability under the Lanham Act unfair competition claim in detail.

The false designation of origin prong of the Lanham Act prescribes liability for "[a]ny person who, or in connection with any goods . . . , uses in commerce any . . . false designation of origin . . . [which] is likely to cause confusion, or to cause mistake, or to deceive . . . as to the origin, sponsorship, or approval of his or her goods . . . by another person . . . ." 15 U.S.C. § 1125(a)(1)(A). This section "forbids unfair trade practices involving infringement of trade dress, service marks, or trademarks, even in the absence of federal trademark registration." *Univ. of Fla. v. KPB, Inc.*, 89 F.3d 773, 776 (11th Cir. 1986). "'Trade dress' involves the 'total image of a product and may include features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques.'" *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1535 (11th Cir. 1986) (quoting *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 980 (11th Cir. 1983)).

In order to establish liability for trade dress infringement, Zamperla must prove three elements: "1) its trade dress is inherently distinctive or has acquired secondary meaning, 2) its trade dress is primarily non-functional, and 3) the defendant's trade dress is confusingly similar." *AmBrit*, 812 F.2d at 1535.

By failing to answer the complaint, BTPE, Golden Horse and BJARM admit that Zamperla's rides involve innovative and unique design concepts and strict adherence to high safety standards that have been internationally recognized among manufacturers in the amusement ride industry. The photographs of the rides attached as exhibits to the amended complaint reflect that the trade dress is primarily non-functional, and that the rides manufactured and promoted by BTPE, Golden Horse and BJARM are confusingly similar to Zamperla's rides. Therefore, BTPE, Golden Horse and BJARM are liable for violation of § 1125(a) of the Lanham Act.

Because Zamperla has adequately pleaded facts establishing liability under the Lanham Act, it has also established liability for Florida unfair competition, common law trademark infringement and FDUTPA. *See, e.g., Rain Bird Corp. v. Taylor*, 665 F. Supp. 2d 1258, 1270 (N.D. Fla. 2009).

*B.     Damages.*

In its motion, Zamperla asked for an award of statutory damages as to infringement of its registered "Jump Around" trademark, entry of a permanent injunction, and an opportunity to present evidence at a later time regarding actual damages as to the other rides infringed. During oral argument, counsel conceded that there was no allegation or evidence of infringement of the "Jump Around" trademark and withdrew the request for an award of statutory damages. He asked, essentially, to amend the motion for the Court to consider whether the evidence submitted is sufficient to award actual damages because it is unlikely that Zamperla will be able to obtain additional information through discovery. Following the hearing, Zamperla filed additional evidence in support of its request for an award of actual damages. Doc. No. 46.

The Lanham Act provides that when a violation of § 1125(a) has been established, the plaintiff is entitled to recover (1) defendant's profits, (2) any damages sustained by plaintiff, and (3) the costs of the action. 15 U.S.C. § 1117(a). Zamperla relies on the Declarations of Alberto Zamperla and Valerio Ferrari in support of its request for an award of damages. Doc. No. 36-1 through 36-4; Doc. No. 46-1.

Mr. Zamperla avers that the photographic evidence and DVD submitted to the Court show that BTPE sold six rides: 2 of its version of the "Jump Around" ride; 2 of its version of the "Flying Tigers" ride; and, 2 of its version of the "Taga J" ride. Doc. No. 46-1 ¶ 7. He avers that

Zamperla has previously sold the "Jump Around" ride for $85,000.00, the "Flying Tigers" ride for $245,000.00, and the "Taga J" ride for $95,000.00. Based on this information, he calculates Zamperla's lost revenues from the sale of the counterfeit rides by BTPE to be $850,000.00.[1]

Mr. Zamperla avers that the photographic evidence and DVD submitted to the Court show that Golden Horse sold five rides: 1 of its version of the "Disk'O" ride; 1 of its version of the "Power Surge" ride; 1 of its version of the "SkyDrop" ride; 1 of its version of "Moto Coaster" ride; and 1 of its version of the "Flying Carousel" ride. *Id.* ¶ 8. Mr. Zamperla avers that Zamperla previously sold the "Disk'O" ride for $955,000.00, the "Power Surge" ride for $795,000.00, the "SkyDrop" ride for $835,000.00, the "Moto Coaster" ride for $4,465,000.00 and the "Flying Carousel" ride for $845,000.00. Based on this information, he calculates Zamperla's lost revenues from the sale of the counterfeit rides by Golden Horse to be $7,895,000.00.[2]

Mr. Zamperla avers that the photographic evidence and DVD submitted to the Court show that BJARM sold three rides: 1 of its version of the "Disk'O" ride; 1 of its version of the "Power Surge" ride; and, 1 of its version of the "SkyDrop" ride. *Id.* ¶ 9. Mr. Zamperla avers that it previously sold the "Disk'O" ride for $955,000.00, the "Power Surge" ride for $795,000.00, the "SkyDrop" ride for $835,000.00 and the "Moto Coaster" ride for $4,465,000.00. Based on

---

[1] Computed as follows: 2 "Jump Around" rides x $85,000.00 = $170,000.00; 2 "Flying Tigers" rides x $245,000.00 = $490,000.00; 2 "Taga J" rides x $95,000.00 = $190,000.00. The total of these amounts is $850,000.00.

[2] Computed as follows: "Disk'O" ride $955,000.00 + "Power Surge" ride $795,000.00 + "SkyDrop" ride $835,000.00 + "Moto Coaster" ride $4,465,000.00 + "Flying Carousel" $845,000.00 = $7,895,000.00.

Zamperla's sales prices for these rides, Mr. Zamperla calculates Zamperla's lost revenues from the sale of the counterfeit rides by BJARM to be $2,585,000.00.[3]

In order to obtain lost sales damages, courts have required the plaintiff to prove actual confusion by consumers and that it would have made the sales made by defendant but for the defendant's conduct. *See, e.g., Playboy Enters., Inc. v. P.K. Sorren Export Co.*, 546 F. Supp. 987, 998 (S.D. Fla. 1982); *Keg Techs., Inc. v. Laimer*, 436 F. Supp. 2d 1364, 1373 (N.D. Ga. 2006); *see also Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1182-83 (11th Cir. 1994).[4] Zamperla has not presented evidence of actual confusion or evidence supporting a finding that it would have sold its rides to the buyers of the counterfeit rides, if the counterfeit rides had not been available.

Alternatively, Zamperla could recover Defendants' profits by providing evidence of the estimated gross sales of the counterfeit rides. *Polo Fashions, Inc. v. Rabanne*, 661 F. Supp. 89, 97 (S.D. Fla. 1986). It appears that Zamperla may be able to present such evidence, even if an investigator may need to be employed, because it refers to websites advertising counterfeit rides for sale and it obtained sales brochures and other information at the trade show. *See, e.g.,* Doc. No. 20 ¶ 36; Doc. No. 36-1 ¶¶ 13, 16.

Accordingly, I recommend that the Court not award damages at this juncture and give Zamperla a reasonable time within which to present evidence of actual damages.

---

[3] Computed as follows: "Disk'O" ride $955,000.00 + "Power Surge" ride $795,000.00 + "SkyDrop" ride $835,000.00= $2,585,000.00.

[4] In *Trilink Saw Chain, LLC v. Blount, Inc.*, 583 F. Supp. 2d 1293, 1322 (N.D. Ga. 2008), the court found that "a presumption of causation and harm should apply to claims for actual damages when a defendant disseminates willfully deceptive, comparative advertising." Zamperla has not cited to evidence in the record in which BTPE, Golden Horse or BJARM disseminated willfully deceptive, comparative advertising.

C. *Injunctive Relief.*

Zamperla requests that the Court enter a permanent injunction against BTPE, Golden Horse and BJARM. It submitted a proposed form of injunction. Doc. No. 44-1.

The Lanham Act provides for entry of injunctive relief. 15 U.S.C. § 1116(a). "The four elements for granting a permanent injunction include: 1) irreparable harm; 2) success on the merits; 3) a balancing of competing claims of injury to the parties; and 4) consideration of the public interest." *Sony Music Entm't Inc. v. Global Arts Prod.*, 45 F. Supp. 2d 1345, 1347 (S.D. Fla. 1999).

Absent the entry of a permanent injunction, a plaintiff's goodwill will be irreparably harmed by the continued sale of goods that are mistaken for the plaintiff's authorized products. *See Pepsico, Inc. v. Distribuidora La Matagalpa, Inc.*, 510 F. Supp. 2d. 1110, 1116 (S.D. Fla. 2007). As discussed above, the allegations of the amended complaint are sufficient to establish success on the merits Zamperla's claims. BTPE, Golden Horse, and BJARM have not shown an injury they will suffer if enjoined from selling the counterfeit rides. The public interest is served by ensuring that counterfeit rides that do not meet the safety standards of Zamperla's rides are not passed off as rides manufactured and sold by Zamperla.

Zamperla has submitted the proposed injunction in word processing format to assist the Court in crafting an injunction consistent with its findings. Therefore, I recommend that the Court enter a permanent injunction consistent with its findings on this Report and Recommendation.

D. *Attorneys' Fees and Costs.*

Zamperla seeks an award of attorney's fees under 15 U.S.C. § 1117(a). Section 1117(a) permits a court to award reasonable attorney fees to the prevailing party in exceptional cases. The

Eleventh Circuit has described an exceptional case as "one that can be characterized as 'malicious, fraudulent, deliberate and willful,' or one in which 'evidence of fraud or bad faith' exists." *Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.*, 253 F.3d 1332, 1335 (11th Cir. 2001) (quoting *Dieter v. B & H Indus. of S.W. Fla., Inc.*, 880 F.2d 322, 329 (11th Cir. 1989), and *Safeway Stores, Inc. v. Safeway Discount Drugs, Inc.*, 675 F.2d 1160, 1169 (11th Cir. 1982)).

By failing to answer the complaint, BTPE, Golden Horse and BJARM admit that they acted deliberately, willfully and wantonly. Zamperla presented evidence that BTPE continued to offer its counterfeit rides for sale through February 2012. Doc. No. 36-1 at 4. Further, BTPE, Golden Horse and BJARM have frustrated Zamperla's efforts to resolve this issue by failing to appear in this case after being served. For these reasons, I recommend that the Court find that this is an exceptional case warranting an award of attorney's fees and give Zamperla a reasonable time within which to present evidence of the attorney's fees it incurred and to file a Bill of Costs.

## V. RECOMMENDATION.

For the reasons set forth above, I **respectfully recommended** that the Court do the following:

1. **GRANT in part** Zamperla Plaintiffs' Motion for Final Default Judgment Against Defendant Beijing Tongjunweida Play Equipment, Co., Ltd. (Doc. No. 34) and Zamperla Plaintiffs' Motion for Final Default Judgment Against Defendants Golden Horse Amusement Equipment Co., Ltd. and Beijing Jiuhua Amusement Rides Manufacturing Co., Ltd. (Doc. No. 37);

2. **FIND** that Golden Horse Amusement Equipment Co., Ltd. and Beijing Jiuhua Amusement Rides Manufacturing Co., Ltd. are liable for violation of each cause of action in the amended complaint;

3. **FIND** that Zamperla is entitled to an award of attorney's fees and costs;

4. **ENTER** a permanent injunction; and

5. **ALLOW** Zamperla a reasonable period of time to file evidence or request a hearing on actual damages, to file a motion for assessment of attorney's fees, and to file a Bill of Costs.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on May 30, 2012.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy